Good morning and welcome everyone. This morning we'll hear argument in U.S. v. Jay Liestman, Mr. Budney. Good morning. Good morning, Your Honors, and may it please the Court. We're gathered here for the next hour to talk about the categorical analysis. There's probably nothing anybody here wants to do more. In talking about the categorical analysis and Jay Liestman's conviction, two things have to shine through. One, that the content that Gonson has proscribed and defined as child pornography sweeps more broadly than the federal definition. And second, that the conduct that Jay Liestman was convicted of accessing child pornography does not fall within the list of crimes, the conduct that Congress has laid out for triggering this enhancement. Mr. Budney, thank you for allowing me to interrupt. Just tell me this. Would we have to overturn both Kramer and Kauffman under your approach? You know, I mean, in Kramer the Court was analyzing a statute citing social abuse, which of course is not a defined term. But in Kauffman the Court was considering a statute citing child pornography, which is a federally defined term. Doesn't that make Kramer distinguishable? Why would Kramer have to be reversed? Kramer does not have to be reversed. Actually, rereading Kramer as I prepare for this argument, it's a great opinion. It is very thorough. It lays it all out. And it lays out the tension with Malouly. And really it says, hey, we're in tension here because we don't have a defined term. If we had a defined term, we're probably going the other way. And it talks about the tension with Lockhart and everything else that it's trying to figure out. How do we define these undefined terms? How do we figure out what it is that Congress is trying to trigger these penalties for? So I don't think that in any way Kramer has to be touched. I think we have a broader understanding, a richer understanding of the categorical analysis after Ruth and after Shular. And so we have a little bit of a better understanding. You can clarify some language. But Kauffman does have to be either cabined or it has to say, we actually do apply a categorical analysis. That is the step one. You can't not apply a categorical analysis like they said in Kauffman. But even more so when it comes to Kauffman, what we have to understand is that that panel didn't really have the full breadth of what should have been argued there. Really they were dealing with a factual or legal impossibility defense. They were saying, look, Indiana sweeps so broadly because it has pictures of nude, fictitious children. And we have a statue right there. And the government did a great job. The government comes back and says, wait, Indiana has already talked about this. They've already said in light of Ashcroft, this is not going to be charged. That was clear as day. So really it's not. It's a distinguishable case. And it's one that if you're faced with that kind of framing of the issues, then that's why the court goes, I'd say, off. But here you have the issues firmly squared up. Sorry, you're going to ask me another question. I'm enjoying listening to you. Well, thank you. I hope everybody else is as well. I'm going to enjoy listening to the wonderful lady at that table. Go ahead. So I don't think you have. I mean, look, cabin or overrule, you're now sitting on bonk. And you also now have the full breadth of Shular and you have the full breadth of Ruth. And you can say this is how it operates here. You know, this court is better than any court in the country when it comes to synthesizing case law that's out here in different places. When you look at the 404B context with Gomez, that opinion, when it came down, that allowed everybody to see clearly exactly what was supposed to happen with the inferential chain of reasoning. The same with entrapment, with Mayfield. We were able to see as practitioners a synthesis of exactly how the approach should be taken. And there is going to be straggling language. There always is. And you can even see that in some of the cases I cite. That now we have a fuller understanding after Shular and Ruth and we say, no, no, no. I understand. It's not generic. How does the Supreme Court's recent opinion in Pugin impact your analysis and your position? I think it reinforces my analysis. How so? Because they're not using a defined term there. And so they're saying, look, if they don't define it, you need to have a – one, we have to have a standard. And so they go with a standard and they go model penal code, dictionary definition. And I actually think that Justice Jackson's concurrence is actually the better reading of it. Because she says, look, we don't have a reason not to think that it's Chapter 73 right here when it comes to obstruction of justice, but we have to formulate a definition so that practitioners and the BIA, that they're able to use this. But that's because it's an undefined term. If you don't have a defined term, then you have to do the hard work. You have to roll up your sleeves and figure out what did Congress mean. And that's the step that we can't skip. Either you have to do it, courts, or Congress actually saved you all the trouble of doing that and wrote one. They wrote one in the very same bill that 2252B1 is in. So they said, you don't have to guess. You don't have to come up with a generic offense. You don't have to go to the model penal code. You don't have to survey the states. Use this definition. And it's easy. Mr. Bugney, can I ask you about a different part of the confusion? Yeah. One of the points that the court made in the end of the majority opinion in Puget is, we don't want to interpret this particular provision of the INA in a way that would defeat the statute, where you don't want to conclude that Congress enacted a self-defeating statute. And so what's your response to the government's point with the appendix to its supplemental brief where they do the statutory survey? So I have four points. I know in en banc you're not always allowed to unpack all four, but I would just begin here. One, in the original briefing it was 31, and there wasn't citation to it. Now we have, here's 40. And it's not that they're self-defeating, because remember, they took it up and said, this is what it looked like in 1996. So we don't know how many statutes sweep more broadly now. States are always modifying their definitions of child pornography or what crimes are captured. Their survey, though, what they tried to survey, at least in the supplemental brief, was where things stood as of 1996. Correct. And are you joining issue with their tally and their summary? If it's not 40, what is it? So I tried. When I mean I tried, I made the interns go and do it. And I tried to come up with, like, what does this all look like? And it was hard, because in many ways we had some state Supreme Court cases that were saying, no, no, no, it doesn't extend that broad. Just like Indiana. Like, we can come up with it, and then practitioners argue it, and they make a facial challenge. They're like, it doesn't mean audio. Audio recordings don't extend the definition of child pornography. But it was probably in the 30s, right? That's where it was looking at in 2006. But the real response to that is not, look, does this sweep more broadly? It's, we know Congress's intent by the words they choose, right? And the words they chose are clear as day for this. And second, we're dealing with a sentencing enhancement provision. So it's not a self-defeating statute. It's not one that says, well, everybody gets to go free. Instead, it's one that says, look, we're just not going to elevate the mandatory minimums if we think that you could have gotten convicted of possessing a lewd image of a topless 17-year-old. Well, if that is, well, we don't want it to be increased. I don't know that their position that Congress always wants the maximum penalty actually holds, nor is it the position that Congress couldn't have thought judges can apply the guidelines in 3553A, and they can come up with the appropriate sentence here. There's no reason to tether that. And the third point is, well, look, we don't count those cases. The Supreme Court didn't do it in Malooly. They didn't say, well, gypsum and salvia, you know, let's see how many states do that. And this court didn't do it in Ruth. We didn't look at how many isomers and how many states were going to sweep more broadly. Instead, we look, what is the text that Congress gave us, and we apply that text. And that's all this court needs to do. But Ruth was a little bit different because in Ruth we weren't addressing the relating to language. I know the author of Ruth, you know, but it's there. It's there, related to. That wasn't the argument that was really advanced. I can tell you that was not the focus of anything that either side put forth or the court's thinking. And I think Ruth is completely consistent with Malooly, and I don't think it would have changed anything because you had the defined term. The defined term is what matters. I'm not here making this argument, and we're not sitting on bonk if we don't have a defined term. So I don't think Ruth comes out any differently. Wait. I'm sorry. No, please. So, you know, taking a step back, in Malooly and in Ruth, the defined term is the object of the prepositional, preposition relating to, right? Yep. Here, though, the object of the preposition relating to is not the defined term. It's possession and the conduct. Right. Child pornography actually modifies the possession and conduct, right? Right. And so what difference, if any, does that make to the analysis? So in some ways Malooly might be instructive, but it's not necessarily dispositive. And perhaps one could say that Ruth is instructive but not dispositive because of the fact that, again, the object of relating to is not defined conduct but other terms. Right. So I would agree with you, okay? So there's two answers to that. The first is you're correct, that it would be a strange opposition because you have related to of child pornography. Instead, it modifies all the conduct that comes there. So if there is going to be a broadening effect of related to, it needs to be to the conduct. And that's the position that we've taken, is that there is give, and it's consistent with SHULAR, that the related to modifies that. So we're not looking at a one-to-one for the mens rea of Wisconsin's possession of child pornography law and saying, does that match the federal definition? Nor am I standing here asking you to come up with a generic crime of what receipt of child pornography or sale means. Instead, the conduct, that's the flexibility, and that's where the textualist reading comes in. Related to. . . Let me understand. So you're saying that there's kind of play in the joints with regard to the scope of conduct, that whether something might be possession of or distributing or those other terms. But so long as that conduct relates to the defined term child pornography. So, sorry, relates to. . . Do you mean relates to. . . I'm sorry. So long as the defined conduct deals with child pornography as defined by the federal statute. Absolutely. So you need to have the content. The content has to match the federal. Related to, whether Ruth comes out the same way, it's defined. That's the cornerstone of this whole argument. It's defined. It needs to take the defined meaning. That's the principle. The second is how does the conduct operate? And related to allows for that given the joints. It allows for the court to say we don't need to look at this. Instead, just like Shular, we look at what is the core conduct being captured here. So in that way, Kauffman, I mean the disposition of Kauffman. . . Right. What the defendant argued in Kauffman, let's put it this way, the defendant did not argue that the conduct at issue was either in the heartland or did not argue about the joints, right? It just didn't argue that at all. No. So in that way, perhaps Kauffman can be somewhat preserved if we can figure out how then just say that in Kauffman this argument wasn't raised. Absolutely. I've taken since the oral argument, the first one a year ago, that Kauffman, it can be limited to the facts of the position that the defense took. And it didn't raise the content. It didn't say, look, we need a one-to-one and this is how it works. That's also why they only cite Malooly, I think, on one page towards the end of the brief. I don't think they cited it all in reply. So it's not like this was properly framed for the court. And second, you also have to deal with the fact that they're not really even talking about how the different conduct works, right? They're just throwing it out there saying, look, it sweeps more broadly because it could be Picasso's nudes. And if so, then this doesn't count. Well, that's not the issue that you guys are presented with. And once the holding of Kauffman is understood in those terms, then this really becomes a very easy case. It's just a matter of applying Delatorre, Garcia, where this court just looks at it. Is the enumerated conduct as broad as what Wisconsin defines it? No. All right, well, then Wisconsin goes too broadly and you have to reverse because it doesn't actually capture it. Can you discuss how you square your position now that there is give when it comes to that conduct, those eight actions listed in 2252, but that accessing is not sufficiently related to those eight action words? Can you give an example of, I mean, there seem to be endless ways one can ship, distribute, mail, possess, and it may involve accessing, it may not. So how do you enter that? Yeah, so I think that's the harder question. I think, you know, as a court, you're always looking to judge it on the smaller one, and that is the defined term. But as to this precise issue, it really is the negative implication canon. Congress has changed the statute. It added accessing, not just as part of Chapter 110, but right in the very act. And they said, like, in 2252. But they don't also modify who they're going to capture. So we know accessing captures more conduct than possessing. It doesn't demand that you have dominion and control of the illicit materials. Instead, it's something different. It's a lower degree of control or a lower degree of what you have. And whether the states define it as the push-pull that the Wisconsin courts did in Mercer, or whether you look at it as just we don't know that you actually possessed this, but we know you viewed it. And then so, like, you're going to be convicted of it. Well, that's different. That's different. And so even though there's give in the joints of the conduct, I don't think that give allows you to plop a different crime in there, one that isn't fully subsumed. Sorry, that possession is not fully subsumed into accessing. All accessing doesn't demand that you have dominion and control. You might have constructive possession. You might have all those other things that could make it a little messy. But Wisconsin says access in any way. So we have to say, like, the least amount that you could do, it just means that you went looking for something you shouldn't have been looking for. It might be child erotica, which is protected. But then you also looked at child pornography. You accessed child pornography at that point, though you might not have exercised dominion and control over the images themselves. So you're not guilty of that. You're not guilty of possession, but you are guilty of accessing. So I think accessing has to be within that list to trigger it. I get that there's a Venn diagram situation here with possessing and accessing, but then how is that not related? Sure. If it's in the same diagram. Yeah, no, I agree. I think if you were to expand related to in the strongest way possible, then almost everything in there is. You know, you could just say related to child pornography, but then you have that surplusage. Why put out that conduct if you're not going to hold the courts to it or you're not going to hold and say the conviction needs to be within this, right? Because related to, even though it provides for that give and we say it's consistent with Shuler, it still needs to be within that. I don't think I'd be here if the only verbs in there, or sorry, nouns, would be manufacture, distribute, or receive, right? Even though all of those are a form of possession. You can't manufacture it without actually possessing it. You can't receive it without having possessed it, and you can't distribute it without possessing it. And so it's related to, but we all agree that possession is such a lesser form of all of those. It's a distinct crime, distinctly punishable, that we wouldn't read that in, even though it's related to. So I think related to has to be read in context. And that's the seminal aspect of all of these statutory interpretations. Mr. Bugney, can I ask you another related question, no pun intended, about access? So you're absolutely right that Congress added it in, as you point out, in 2252, what, A4, that way. The way I read B1, is that B1 would expose a defendant to an enhanced sentence if that defendant had a prior federal accessing conviction. And the reason is because of the language that you're exposed to the enhanced penalty if you have a prior conviction under this chapter. So it seems odd to me that a defendant with a prior federal accessing conviction could get exposed, but a defendant that has a state accessing conviction would not. And therefore, how do we interpret the statute to make sense of that? I think two ways. So one, you're totally correct. It is the chapter, everything within the chapter allows for that. I think two is that the federal have defined accessing in a particular way, right? And the states are allowed to define accessing in any way that they want to. So it's a respective comedy that we'd say, this accessing, we don't actually know how broad the states are going to go with that. And so we're not comfortable with it. So it's kind of like a nested, categorical approach question on accessing. Correct. That's my best answer to that, because I agree with you, it's a bit of anomalous in that regard. As to the rest of your question, though, I think that once we have that aspect of it, if related to allows for there to be give, but it doesn't allow for complete expansion up to the farthest reaches of it, well, then we are properly understanding how the statute works. And we're interpreting it within what Congress means, because we're respecting the due process implications that we have here. Remember, Malooly and everything else, they read it in context. They say, look, we're dealing with the BIA and we're dealing with immigration. Huge. But related to in all of the expansion that they have, Morales was a federal preemption case. And Coventry is also federal preemption. All of those are the kinds of cases where we say we're looking related to as broadly as possible, because we want the reach of federal preemption to go what it needs to be. But here we're dealing with the pushback of the Fifth and Sixth Amendment. And we're saying, look, you need to have notice. And you don't have notice if it's just could it be related to? Yeah, I think we could. You know, some judges might disagree, some defense lawyers, some prosecutors might disagree. But that's the kind of clarity that is lacking when we start to just make it hazy. But we have it concrete when we apply the rules of construction. When we apply the text that Congress has given, very clear. When we apply the negative implication canon, also very clear. And that's the clarity that this court should give us. Because then we can make the decisions that we need to make. What is the charge to go with? What are the penalties my client's looking at? It shouldn't be that you're just kind of guessing. When you're related to as read that broadly, no one is certain exactly what's going to trigger what. And that kind of uncertainty doesn't just implicate due process. It creates problems along the system. Sorry, Your Honor. I think I interrupted you earlier when you were responding to one of Judge Scudder's questions about the 40 versus 6. And Mullooly and other Supreme Court cases specifically tell us that we have to look at the context in which the statute was passed. And this statute aimed to punish recidivists harsher was passed when there were roughly 40, give or take some, statutes in states that wouldn't have captured it. So I think you got through one of your four reasons. Why else shouldn't that impact our analysis here? Because that seems directly responsive to what the Supreme Court said in Mullooly. So I'll try to telegram the one, two, three. So one, we know the intent. Two, we know that it's an enhancement provision. So it still allows for that. Three, we don't usually count that. We haven't counted that in any other regard when it comes to the categorical analysis. And I think that's a central point, is that this is a sensitive area, sensitive crime, right? But we don't apply different rules of statutory interpretation in drug cases than we do in child porn cases, as we do in regular generic cases. So like burglary, when we argued Simon Franklin to this court, it wasn't that we counted and said, well, how many burglaries are out? No, we just said, like, this sweeps too broadly. And we didn't count that because we say, and especially here, that's generic, but here we have a defined term. So Congress gives it and we apply it. That's the only thing we're asking for. And it's not absurd to apply it the way that we've asked you to apply it because in applying it that way, it still captures recidivists. It's not self-defeating. Where, like, you know, Hays is the best case for it, the 922 G9, where they say two-thirds of all the states, this is no longer a crime, right? Well, no longer a crime and no longer an enhancement that, you know, triple is your mandatory minimum. Those are two different ball games. What if it only captures recidivists in six states, though? Isn't that telling? That would almost be self-defeating for Congress to pass that. Well, but remember, it's only a small part of the overall act. It's not as if the act itself, we're like, oh, my gosh, what are we going to do? All of Chapter 110 is still triggered. So are so many other aspects of it. And, again, I don't really know the math as to the 1996 as to what's been changed right now. Think of it this way, though. It provides an objective explanation for why Congress chose the words relating to instead of is. The burglary example doesn't apply here. That's the, you know, foundational case of Taylor and the statute there. The ACCA uses the word is. A crime, the enhanced penalty applies for a crime that is burglary, extortion, et cetera, et cetera. This related to language or relating to language is unquestionably a broadening term. And my question is why does that imply that an exact match is necessary even when the words that relating to connects with the objects incorporate conduct plus a defined term? This would be the first case. The Supreme Court hasn't addressed that question. As to how related to operates. In this context. No, it has. Malouli is the immigration context that was highly contextual to all the BIA. The BIA's history of interpreting the federal statutes and the changes in the federal immigration code over time. This is very different contextually. Absolutely. In terms of statutory history. So are you arguing, I mean, you have stressed throughout this argument the importance of the definition, whether there's a definition actually that Congress gives. So why do we assume that if it's relating to the definition, I assume, and there might be a little bit more and a little bit less yet still inside the definition, then there might be some things that stray beyond it. But you'd still have a relating to since states phrase things differently, states express things differently. Absolutely. I mean, the defined term is what controls. I mean, that's really the cornerstone of it. And as far as how far we go away from that or how related to acts, I don't think it's as groundbreaking. This is the first case. I think the first principles have been laid out. You know, I went back from Blackstone to Kent. Like, this is it. You have a defined term and we're going to use it. I'm not suggesting we don't use the defined term. I'm suggesting that the verb matters. That relating to is different than is. We're not asked to to cabin the inquiry and look for only crimes that are a one-to-one match. In other words, that's what would be required if the statute says apply the enhanced statute if the defendant has a prior conviction for a crime that is possession of child pornography. One-to-one match, exact match is required. The difference in terminology, the difference in the text of the statute matters here. Context always matters, right? But the context isn't that related to, as Judge Lee said, it's not that it goes and modifies the defined term. It modifies the verbs or nouns that come right after it. That's where I think related to operates. Sorry, you were going to follow up. The conviction here relates to the possession of child pornography as those terms are ordinarily understood. Even if we use the federal definition, accepting your premise, the federal definition of child pornography applies. As the term relating to is ordinarily understood. Plenty of notice. Absolutely. I disagree as far as notice of due process notice. I don't think that's true, that I have noticed. Because it would be no different than coming up here and arguing that just pre-Johnson and saying you have noticed, that's otherwise dangerous. You have a sawed-off shotgun, you know that's dangerous. I don't think you were being asked a question about constitutionality. Chief Judge Sykes' question relates to really the only one I have, which is can you articulate what in your view is the difference between the phrase relating to and the word is? The word is demands that one-to-one. It demands that. But that's not the only way that Congress can demand that. Could you address what in your view is the difference between these phrases? That's what's critical in this case. The core answer to your question is look at 3559E. Related to points to something. It's a pointing word. Just like how many times, whether it's pun intended or not, we've used related to repeatedly. Because that's how we speak. It's related to this, it's related to that. It's not meant in the same context of this broadening aspect that we're now going to throw out. I don't want to say throw out, but we're going to make mushy some of the canons of statutory construction that we otherwise use. Maybe I could ask the question in a different way. Could you tell me how the meaning of this statute would differ if the words relating to were struck out and replaced by the word is? Right. How, if at all, would the meaning of the statute change in your view? You would have to then fashion a generic offense for transport, possess, and all the other seven nouns that come after that. Then the content, as far as the content. Not the, well. No, sorry, Your Honor, no. We're serious. I don't mean, I'm not trying to filibuster or not answer. I'm wondering if actually your answer is that if it said is, there's less interpretive flexibility. There are more state statutes would be included under relating to, but they all have to relate to the definition that Congress furnished. Absolutely. That has to be it right there. The content has to be there. And that has to match. And you further have to say it isn't here because the additional body parts and the like that this Wisconsin law covered stray too far outside those boundaries. That would be the precise answer that I was about to give. With that really great answer, I think I'm going to reserve the rest of my time for a bottle. Why don't you just let Judge Wood do the rebuttal? Alexander. Welcome. Good morning. Good morning, and may it please the court. Jenny Ellison for the United States. The text and context of section 2252B1 establish that a prior state conviction triggers the recidivist enhancement in the federal statute as long as it categorically relates to the possession of child pornography, even if it's not an exact match. So, Ms. Ellison, let me ask you two things as a preliminary. First of all, doesn't this case make you wish that there were no categorical approach? But actually, more seriously, secondly, I'm interested in knowing to what extent the government intends to rely on this brand-new argument about the 1991 decision of the Wisconsin Supreme Court of Patron. Is this a serious part of your case? And if so, is this all just much ado about nothing? Well, so I'll say we don't think we need to win the Wisconsin law point in order to win this case because we do think that relating to has a broadening effect on the definition of child pornography. But if the Wisconsin law point suggests that through authoritative interpretations of the Wisconsin Supreme Court, there's actually no difference in the statutes anyway, what are we doing? Yes, no, Your Honor, I do think as a threshold matter, this court has to determine what the scope of the Wisconsin statute is. And the Wisconsin Supreme Court has definitively interpreted the term lewd in a way that is narrow enough to exclude. That was a different statute. It was, but the term lewd carried through. So what Patron was focusing on was the meaning of the term lewd, and this court in three cases has recognized that the meaning of lewd remains the same in the revised statute under which Mr. Leastman was convicted. But this case doesn't turn on that statutory phrase. It has to do with what intimate parts are covered by the Wisconsin statute. But the images have to. That has changed. That statute has changed. Patron did not – it could not because it preceded the expansion of the statute, but it doesn't stand for the proposition that intimate body parts that are now reflected in the statute or included in the statute and covered by the child pornography code are narrower than those that are listed in the statute because it was interpreting a statute that was, in fact, narrower on its face. No, certainly the body parts included in the statutory text were broader after the revision, but the word lewd remained the same. And so the question is whether you can have a lewd exhibition of breasts and buttocks within the meaning of lewd as described by Patron. And the majority of the Wisconsin lower courts that were applying this continued to recognize that Patron's definition of lewd controlled. But I would say that there's another clue in the Wisconsin statutory history that this court can look to, which is that in 2019, the Wisconsin legislature adopted a new statutory definition of the term lewd exhibition of intimate parts. That definition said, lewd exhibition of intimate parts means the display of less than fully and opaquely covered intimate parts of a person who is posed as a sex object or in a way that places an unnatural or unusual focus on the intimate parts. What that statutory revision from 2019 does is it makes clear that Patron's definition of lewd actually does – can be applied to buttocks and breasts. Candidly, I'm not sure why the legislature would have made that 2019 change if the change they'd originally meant to do had not been somehow ineffective. Yes, Your Honor? We're speaking about Wisconsin, and I really have been wondering why did the Wisconsin amended statute to include accessing child pornography if possession covered the same conduct? I think what happened is – oh, yes. I mean, your argument appears to ask us to interpret the amendment of the statute almost as – I mean, not almost, but as a meaningless gesture. Yes, Your Honor, and again, we don't think that we need to win the Wisconsin law points in order to win this case, but with respect to that point, I think what happened if you look at the context is that there was this intermediate Wisconsin Supreme Court decision in Mercer where a defendant argued, as defendants had been arguing, that accessing child pornography with intent to view didn't qualify as possession largely for technological reasons. You know, if, for example, a defendant doesn't understand that when he is looking at something on his computer, a copy of the image gets saved to his computer, then he claims, well, I didn't knowingly possess that image because I didn't know it was on my computer. The defendant in Mercer made that argument, and the intermediate court rejected it, but some defendants, as in the Ninth Circuit Kaczynski case, which is what prompted the federal revision, the defendant in that case made a similar argument, and it succeeded. The Ninth Circuit said the defendant didn't knowingly possess those images because the defendant didn't understand how the cache system on his computer worked, and I think in both cases, both the Wisconsin legislature and the federal legislature looked at that and said, well, this is not what we, you know, we do not perceive possession to exclude these types of offenses, but we want to make it, you know, to the extent that there are courts or defendants who are going to try to make these arguments, we want to foreclose those arguments. And so I think that is the purpose of the access with intent to view language. But again, even if there is some daylight between possession and access with intent to view or between the Wisconsin definition of child pornography and the federal definition, they still categorically relate to the possession of child pornography described in the federal statute. Can I just ask you just as an example, if I held up a picture, I'm holding it, and it's a picture of, you know, something that falls within the definition of child pornography, and you're Mr. Leisman, and you look at it, have you possessed that picture? Well, I'm not sure if you're just holding it. I'm holding it. Yes. Have you possessed that picture or have you just accessed it? I'm not totally sure if he's kind of in the room and you hold it up, if he would be actually accessing it. A different person. Maybe they pull it up in their computer screen and they turn the computer screen around and he looks at it. He didn't touch the computer. I'm just getting some sense that there is some daylight between those two terms because you can have access to something that you don't possess. I mean, I think in... Not even beholding it, you know, in the simplistic term of possess. It is, you know, it is, I don't want to say that it's impossible for there to be some difference between access with intent to view and possession, but this court can go straight to the relating to language, and I think if you look at the action words described in the recidivist enhancement, they, what they're getting at is the different stages of the child pornography market. There is production, so the creation of child pornography. There is the dissemination of child pornography, and then there are two words relating to the consumption of child pornography. Are there any limits to the idea of relating to? If you look at the Malouli exchange between the majority and the dissent, the dissent's all in on relating to, but the odd thing about the government's reliance on Malouli is Malouli in the end says, this doesn't work here because we have a statutory definition. And the same thing has happened in other cases. And so I, and the majority is worried about, actually so is Judge Hartz in the Tenth Circuit in that opinion, is worried that, you know, sort of in the end everything relates to everything else. It's the old proximate cause problem. So what limitations does the government think exist on how much relates to anything else? Well, I'd first like to quibble a bit with the description of Malouli because I think Malouli was actually not about the fact that there was a statutory definition. Malouli focused on the fact that there was a textual cross-reference and then also the history of the statute. No, they look at the definition of controlled substances. They clearly refer to it. Yes, they talk about history. I'm not even going to tell you what I think about history. But if one wants to dig into the legislative history of all of these statutes, I suppose we come up with a richer consideration of what they were all about. Although it's interesting to see legislative history making a resurgence in this way. But I think Malouli does, in fact, refer to the fact that it's got to be related to the definition of controlled substances as it appeared in the statute. Yes, well, in a footnote, Malouli actually says that absent the textual cross-reference, the dissent might have a point. The reason that the textual cross-reference is important is because the language in Malouli, the cross-reference was to a definition that referred to a violation of a law or regulation of a state, the United States, or a foreign country relating to a controlled substance, parentheses, as defined in Section 802 of Title 21. As this court explained in Ruth, in the Guidelines Analysis section of Ruth, the ordinary meaning of controlled substance is generally understood to be any of a category of behavior-altering or addictive drugs, such as heroin or cocaine, where possession and use are restricted by laws. So absent that parenthetical, the parenthetical is unnecessary for the reference to federal law, because federal law, it necessarily has to be the federally controlled substances that a federal conviction would rest on. So the only reason to include the parenthetical is to clarify that the controlled substance word does not point back to the individual sovereign's definition of controlled substance, but instead is pointing to the federal definition. So I think in that— If the state decided to reenact prohibition, that wouldn't matter, because it's the federal definition. I think—well, the way this court understood Ruth, and the term—the ordinary term controlled substance, I think, excludes—would exclude alcohol probably, but yes, I think that's essentially, I think, what's going on in Malouli. And so, you know, and the Supreme Court's decision in Pugin last term comes in and clarifies that, you know, really Malouli is based on the unique circumstances of that particular case. It's—and I think that's why every court of appeals except for a divided Ninth Circuit has looked at Malouli and has looked at the recidivist enhancements that this court is considering and has said that Malouli does not require a one-to-one match on the child pornography definition. And I'd also just like to make a point— I mean, what happens in Pugin about Malouli is it's a CF, you know. There's no, like, deep investigation Malouli. The court says, to the extent any doubt remains about whether this 1101 business requires that an investigation be pending, the phrase, quote, relating to obstruction of justice resolves the doubt. CF Malouli. And that's all you get. So you're reading a lot into that, I think. Yes. No, I mean, I— Because, of course, in Malouli, they don't go the broad direction for relating to. Yes. But, again, I do think that is because of the unique text and context. You're stuck with the raw fact that they don't adopt the approach to relating to that you're urging. That's right. And so I think that's why this court has to look at the text and context of our statute. And so the text relating to the ordinary meaning of relating to is broad. And we have a recidivist enhancement that Congress has repeatedly revised every time with an intent to either raise the mandatory minimum and maximum or to expand the number of predicate offenses covered. It has been consistently expanding. I think, you know, looking at those expansions, it seems like Congress's goal is to cover the waterfront of recidivist offenders. And, you know, I know that legislative history is out of fashion, but if you look at the reports that Congress issued in connection with these amendments, it's clear that Congress is very worried about the problem of recidivist offenders. I think that is reflected in the text of the statute. And the Supreme Court has repeatedly said that we don't want to assume, that we generally don't think that Congress affects, you know, enacts a self-defeating statute. The Supreme Court has said why it's self-defeating, though. It does give more room. Now, of course, in Mr. Leisman's case, it's very difficult to see what difference any of this made since he winds up with a 180-month sentence, right, which is well below the statutory maximum even with no enhancement. Yes, that's correct, Your Honor. But I do think that, you know, what Congress had in mind, though, Congress was genuinely concerned about recidivist offenders and the problems that, the danger that they posed and the importance of, you know, making sure that district judges with sentencing authority, Congress wanted to cabin that because, and Congress does say this in some of the, again, I don't want to talk too much about the reports, but, you know, Congress says we think that some judges have been imposing sentences that are too low because they do not take these offenses seriously. And I think that's, you know, so the recidivist enhancement was something that was important to Congress, and Congress has been consistently expanding the number of federal predicates, too, but, you know, to go to the point of, you know, the access with intent to view not being added to B-1 when it was added to A-4 at the same time, I think there are two possible explanations for that. One is it may have been an oversight. Congress may not have been looking at B-1 at the time, and if you look at the statutory text that they passed, B-1 was not actually in front of them in the bill that they were looking at. But I think equally likely and perhaps more likely is that Congress thought that they had already taken care of all of the state offenses with the relating to language, and so there was no need to go back to the drawing board on that. Congress believed that it had crafted an enhancement that would stand the test of time. So just to be clear, though, I mean, I just want to make sure I understand this because I don't think the Supreme Court has taken this step yet. The government's position is that any time the words relating to are the operative words, we don't use the categorical approach anymore. No, I'd like to clarify that. It is the categorical approach. How is it the categorical approach? So what makes an approach categorical is that you are looking at the legal definition of the prior offense, and you're comparing that to the relevant federal definition, but the federal definition determines what categorical inquiry is required. In this case, our federal definition is in 2252 B-1, and the definition says that you ask whether the prior state conviction relates to the conduct described in the statute. We would have the categorical approach, the modified categorical approach, and the related to categorical approach. I certainly don't want to proliferate categorical approaches. No, I think that there's really just – we're talking about a single categorical approach here, and it's – Let me ask you what, in your view, the phrase relating to modifies. Your adversary suggested that it modified the words transport and possession. But, of course, what it immediately precedes in the statute is the phrase aggravated sexual abuse, relating to aggravated sexual abuse, and then a lot of stuff. Yes. What does the United States – what does the Department of Justice think the phrase modifies? We think that relating to carries all the way through, and it necessarily has to – It modifies every other word in the rest of that subsection. Yes, and it has to, because there – otherwise, I think – so if it says – the statutory language says, as relevant here, under the laws of any state relating to, and then it begins with aggravated sexual abuse, but there would be no connector. If relating to doesn't go all the way through, then there's no logical connector. It would say, if you drop out the relating – It would be hard to see how relating to could modify transportation and possession, but not everything else. But it's easy to see how it could modify just aggravated sexual abuse, and nothing else. So why do you reject that possibility? As a grammatical matter, I don't know. I'm just looking at the text right now. I'm not sure that I see a way to grammatically read the text, because if you say it only modifies the first, then it would be – the next thing would be, under the laws of any state, sexual abuse. So I suppose you could say, then – but then, you know, even if you read it that way, if it says – then it's kind of referring to a – Okay, so your argument is that you'd need at least one extra preposition. There needs to be something to connect the state law. So I think that's what it is. And we know that it carries all the way through, because it goes not just to child pornography, but then after that there is sex trafficking of children. And so we know that relating to carries through to sex trafficking of children. So why would it hop over child pornography, especially when we have these additional contextual clues? I'd also like to – Why doesn't it just apply to the verbs and not the of child pornography? Because grammatically that would be consistent. There are verbs, and then the or, and there are more verbs, and then or sex trafficking. Why wouldn't it just apply to that? Because I think – well, first of all, it does go to sex trafficking. But I think that the relating to – it's all one course of conduct. It's not that possession is the action and child pornography is the object. It's all – the action is possession of child pornography. It's a unified action. You're not talking about kind of possession of anything. It has to be possession of child pornography. And so it makes sense, you know, if you had a different word that, you know, was – not phrased as kind of possession of child pornography, but if you instead had a word that captured all of that, a single word, it would be effectively the same thing, and there would be no question that relating to goes through. I'd also just like to address the point, though, the argument that there is some difference between having a term that is statutorily defined and having a term that does not have a statutory definition. I think there's – everybody would agree that every term in this statute has a fixed meaning. It has a specific definition. It just may not be a definition that appears in the statute. It may be a meaning that a court instead has to discern, but it has a meaning. It's not a shifting meaning of possession. Possession has a – Ms. Olikson, can I ask you a question with regard to a grammatical question? So let's say we're dealing with a statute called relating to stealing a car, okay? And so relating to, I think, grammatically, the object of relating to would not be car, but it would be stealing, correct? And car, of car, would modify stealing, right? I'm not – As a – I'm a classics major, so take my word for it. Well, I was not a classics major, so I can't share that expertise, but I actually – But so relating to stealing a car, so if you were convicted of relating to stealing a horse, for example, that would not come within the heartland, or I guess within the heartland is what test we used in Kramer, within the heartland of relating to stealing a car. So the definition of car really does make a huge difference in the scope of relating to. And so why isn't the appropriate – Why can't we assume that Congress knows grammar and say that the play in the joints of relating to deals with, as Judge St. Eve says, the actions, the possession, the distribution, and what is it that you have to possess or distribute? Well, you have to steal a car. You have to possess or distribute child pornography, and we know that Congress gave us a definition of child pornography, so why isn't that just the end of the inquiry? Well, so just to push back on the hypothetical, I actually think if a statute said relating to stealing a car, then there might be a question about does an RV qualify as a car, and this is actually something that was sort of, you know, in a different sense in front of the Supreme Court in the statute. To follow up on Judge Easterbrook's question, how would you define the scope of relating to? Would it just be on a case-by-case basis so that a defendant would just be up to the whims of the judge that makes the decision? How do you decide then what the scope of relating to is? And didn't the Supreme Court in Malawi, you know, even though it may or may not be dispositive of this case, didn't by tethering the definition of relating to to a federal definition say that, look, we should at least start with the federal definition to see how far it expands? Yes, no, we definitely, we agree that the starting point is the federal definition. There's no dispute on that. But relating to language then creates, you know, a question of is there a sufficient connection under the statute? And Your Honor, to answer the question, as with, you know, this Court is well aware with the categorical approach, the courts are often called on to make calls about whether there is in fact the required categorical match with a specific statute. Those calls are not always easy. They sometimes can be very difficult. But the fact that there are difficult calls around the margins of a statute does not mean that the statute is vague. It means that the court has to make a judgment. If an individual defendant is at an edge case, if there is a, you know, hard question about whether it actually is sufficient to be relating to the relevant federal comparator, then that defendant can make the argument that it doesn't relate. The defendant could even make an as-applied vagueness challenge, saying a defendant in my position would not know that this statute applies to my conduct. I don't know that that vagueness challenge would succeed, but it would be something to deal with. But I think, you know, for better or worse, when we're dealing with a categorical approach, we are dealing with a situation where courts are going to have to come in and figure out whether the comparison has been made. And this is another example of that. Would your argument be in line with the guidance given regarding statutory interpretation in line with the guidance provided in Ruth? So with respect to Ruth, I think we, I think Ruth, there was some awkward phrasing in Ruth that has created confusion about how the categorical approach applies. And we don't think that the Supreme Court's decisions should be read to say that there are only two categorical methodologies. It is true that in Shuler, the Supreme Court said there is, one method is to look to see if there's a generic offense, and then there's this other category where you don't do that. So basically saying here's one type and then everything else is other criterion. And I think some of the language in Ruth indicates that the other criterion method, all of those statutes, no matter how the statute is phrased and no matter what the statutory context is, you apply the same categorical inquiry every time you ask whether the statute necessarily entails that conduct. But that was just the specific categorical methodology that the Supreme Court was applying in Shuler based on the text of that statute. I think the other criterion method is really just a method saying we, you know, it's not the generic offense method, it's something else. But the something else is not a one-sized-fits-all. So I think that with respect to Ruth, you know, again, it's small changes with how Ruth phrased it, but to the extent that this has been confusing courts into saying you have to have, there are only two boxes that a categorical methodology can fit into, I think that's been creating confusion. And frankly, I think this case has been a stellar example of how that has, you know, caused more problems than it has solved. But Ms. Ellickson, I mean, you sort of negatively defined this, and I'm not sure whether we should blame the Supreme Court and Shuler or ourselves and Ruth or maybe a host of people for this, but does the government have any idea what these multiple versions of the categorical approach look like on a definitional side? I mean, it would be very helpful if you think of things like the rule of lenity and the like for defendants to have some idea what they're facing. So I don't, I'm not going to be here saying that there are three or six or nine categorical approaches. I'd just pull anything out of your pocket. No, I think what there is is there's one categorical approach, effectively, with the modified categorical approach, but the one categorical approach is... Yes, I know, I didn't make it up myself, but the way the categorical approach... I'm just trying to make sense of what the Supreme Court said in Shuler, because obviously they're the Supreme Court. Yes, yeah, no, and I do think that Shuler, I think there's some, it's not surprising that this court maybe found Shuler a bit hard to parse in this respect. What Shuler was focusing, though, on was the question of whether the, in that case it was a statute that referred to involving manufacturing, distributing, et cetera. Shuler was concerned with the question of whether those nouns or those words were generic offenses or whether they described conduct. And so that's why the Supreme Court was referring to generic offenses. Sometimes we have to come up with a generic offense because the statute says something is the generic offense. Sometimes the statutory text and context requires a different inquiry. And sometimes a third possibility or a fourth or a tenth? Well, I think you basically, it is a question of statutory interpretation. And courts, you know, I think district courts are used to doing this. They're used to looking at a statute and saying, what does this statute require? And if the statute requires, you know, the statute tells you what categorical analysis it requires. But what makes the analysis categorical, again, is just the fact that you are comparing the legal definition of the prior conviction to the relevant federal definition. Not the relevant federal definition, but the relevant federal recidivist statute. The statute. That's what I, the definition in the statute. And in this case, what I mean by definition, I want to be very clear, I'm not saying you compare it to the child pornography definition. I'm saying the definition that I'm referring to here is state, is a conviction under state laws relating to. That's not a definitional statute. It's a recidivist statute. But it does, it defines the categorical inquiry. But I take Your Honor's point that perhaps my phrasing could have been clearer on that. I mean, this whole area is shot through with imprecise language. Yes, and I don't want to contribute to that. So, yes. The statute, though, is telling you what comparison is required. If we agree with you in your interpretation of relating to here, does that undermine the Court's holding in Ruth, putting aside the number of categorical approaches? So, is your next case going to be, well, ah-ha, it says conduct relating to federal drug crimes that we have to read relating to broadly there as to narcotic drugs. Well, as this Court recognized in Ruth, this Court had already issued several opinions before Shuler that adopted essentially the same view. Well, relating to was not at issue in the Ruth case. That was not, there was a throwaway line in one of the briefs. That was not the way the case was argued. My question for you is, if we agree with you here, does that undermine the holding in Ruth? I think it doesn't have to, but if this Court were to... I could make the other argument, but the question for you is, from the government's standpoint, does that undermine Ruth? I do think that the not giving meaning to relating to in Ruth is a potential issue, and I think if this Court were to walk that back, I don't want to stand here and say, you know, the government is not going to make certain arguments in the future because I think the government will assess its options, but none of that is before this Court in this case. This case doesn't involve that definition. I see that I'm out of time. I'm happy to, if the Court has any last questions you'd like me to answer, I'm happy to do that. There have been circuit courts that have grappled with this controlled substances versus the child sex offense. For example, the Eighth Circuit, I believe, in Brown, in an opinion by Judge Colleton, has grappled with this and emphasized the point that you're hearing, that context matters. And so the contextual background against the backdrop of sentencing enhancements for controlled substances offenses might be different contextually and historically than the backdrop for enhanced sentences for recidivist child sex offenders. So it may be that outcome-wise it's all reconcilable. Yes, I agree with that. I do think that the different texts and context of the statutes, you know, I'm not standing up here taking a position on felony and drug offense, but I think Your Honor is correct, that it may well be a different analysis in that context. If the Court has no further questions... One more, sorry. Getting back to the stealing the car example, related to stealing the car, would you agree that the more defined and definite the car is, the more limited the reading of related to would be? So, for example, if we say related to stealing a red car with white hubcaps that only seats four people with a catalytic converter, right? Would you agree that that would limit the reading of related to more so than if it was just stealing of a car? I think potentially, yes. If the universe that you're comparing it to is an extremely small universe. So then the definition of child porn, at least in the federal definition, seems to me a very intricate and involved and specific definition of child porn, right? We have a very long statutory definition in 2256 that incorporates sexually explicit conduct. Then we have more definitions of sexually explicit conduct. So, in a way, isn't this kind of like my expanded example of relating to stealing a car? The more that Congress defines of child pornography, the more that we define a car, that then cabins are reading of related to. I would disagree with the idea that the child pornography, that the federal child pornography definition is narrow. I think it actually covers... I'm not saying it's narrow. I'm saying it's very well defined, has some very specific contours. It's a rather elaborate definition. Yes, no, and so I think this court can look at the specifics of the definition in determining whether something categorically relates to that definition. I do agree with that, that you look at the specific definition that is serving as the baseline. And so, in my example, if you're like stealing a white car, right, would stealing a white car be related to stealing a red car? In that case, I think it might. I think it might. And so I think you look at what exactly is the point of the stealing of the car provision and what is Congress trying to get at. So I think it might. Thank you. But I know that I'm over time. Thank you very much. Thank you very much. Mr. Bugney. I don't think I'm allowed to cede more time to Judge Lee with his questions. No, I'll give you some extra time. Why don't we add... I think they actually explained my point quite well. I was not a classics major. I think the big thing, the pushback, I agree with you that there is a lack of clarity and imprecision with this. But what we do have that is precise is that we have one definition that applies to all of Chapter 110. And how this court looks at the context and says, look, we have different history and everything else, that's up to this court. It's an organic process of determining statutory interpretation. But the baselines are always defined terms. Well, let's carry that through. Assume that the federal definition of child pornography is the baseline here. Take your premise. Why doesn't the federal or why doesn't Mr. Leisman's conviction under the Wisconsin statute, given the definition of the crime that he was convicted of in the Wisconsin Criminal Code, relate to possession of child pornography as defined in the federal criminal code? Relate to in the technical sense? No. Because it relates to, the relate to has to modify their... Relate to in the ordinary common understanding of the term. Ordinary common, just like I've been relating to you guys in a conversation. Yes, it points towards it. But then what... Isn't it not in the heartland? I think the heartland quote is actually like it's only one small line in Kramer, and I don't think that complies with due process. Because even the government, we're now at en banc, and we don't know what the definition of child pornography is going to be and how far away it's going to be for someone's conviction to be tripled. But this statutory definition in Wisconsin is not far away at all. I think it... It's almost identical. Opaque coverings of a topless... Allude opaque coverings of a topless minor's breast. It covers more. There's no question about it. It covers more conduct than the federal statute. But it's clearly in that heartland. Pick whatever other word for heartland if you don't like heartland. But it's in the core. It's within the core of the offense. It's not so distant as to create a margins problem that would raise a due process concern. Well, I think it's a notice concern, but it's also like then what about child erotica? Child erotica. Is that related to child pornography? Absolutely. In the everyday colloquial... Then you argue that as a First Amendment matter, not as a question of how the categorical approach applies. We'll raise the due process argument separately in those margins cases, not as a matter of how the categorical approach applies. No, because in those cases, we're bound to what the statute is, and we're bound to how this is going to operate. It's not that I'm challenging the 2003 case, that I'm going to raise the First Amendment there. Instead, I'm trying to say whether or not this applies. And if you start to go away from related to captures, now child erotica, now obscenity, and now even in Wisconsin, exposing a minor to harmful materials, which is materials of sexual activity. That's related to child pornography. I don't have the right to challenge that prior conviction. All I have is to say this doesn't fit that definition, and my client, before he signs a plea agreement or decides to go to trial, needs to know what the penalties he faces are. That's where the element of it is. I know I've probably gone over the time, but if there are any other questions, I think we should keep Ruth. And if there's any other questions. I think we're done. Thank you. Our thanks to all counsel. The case is taken under advisement.